FLETCHER, Respondent, *vs.* ST. LOUIS MARINE INSURANCE COMPANY, Appellant.

1. An open policy of insurance upon shipments gave a general privilege of reshipment. A boat upon which a particular shipment covered by the policy was made, abandoned the voyage which she might have completed, and the goods, after some delay, were reshipped upon another boat. *It was held,* that the reshipment did not avoid the policy. If the *delay* was such a deviation as would avoid the policy, it could only be available to the insurers when relied upon in their answer.

2. By the terms of an open policy, the risk commenced "from and immediately following the loading of the goods on board the boat or vessel," and continued "until the arrival of said boat or vessel at the port of destination, and with reasonable time allowed to discharge the cargo." Part of a particular shipment covered by the policy was discharged at the port of destination, but a reasonable time had not elapsed to discharge the remainder. *It was held,* that the risk did not cease as to the part discharged, unless it had been delivered to and received into custody by the consignee.

3. What amounts to a delivery and acceptance is a question of fact for the jury.

*Appeal from St. Louis Court of Common Pleas.*

This was an action on an open policy, brought by Fletcher to recover the value of one hundred and forty-seven bales of hemp, indorsed upon the policy, and destroyed at the St. Louis levee by the great fire on the 17th of May, 1849. The plaintiff shipped the hemp from different points on the Missouri river, on board the steamboat Amelia, consigned to Yeatman, Pittman & Co., of St. Louis. The boat, with the hemp on board, proceeded to Jefferson city, where, on the 12th of May, she met the steamboat Kit Carson, and made a bargain with her to take the hemp on board upon her return trip, and carry it to St. Louis. On the 15th of May, the Kit Carson returned to Jefferson city, and took the hemp on board and proceeded with it to St. Louis. There was nothing in the condition of the Amelia, or of the river, to prevent her from completing the trip; and the only reason assigned by the captain for the reshipment

was fear of the cholera, which was then raging in St. Louis. The Kit Carson arrived at St. Louis on the morning of the 17th of May. Before the fire, one hundred and twenty-two bales of the hemp were placed out on the levee. The remainder was not put out for want of time. At night the fire broke out, which destroyed as well that which remained on the boat, as that which had been put out on the levee. There was evidence that the captain of the Kit Carson notified the consignees, about one o'clock on the 17th of May, that the hemp was ready to be delivered, and Pittman, one of the firm, came down to the levee, where the hemp was being put out. All the hemp consigned to Yeatman, Pittman & Co., including that of plaintiff, and also thirty-three bales belonging to another consignor, was being put out in one pile, without being assorted. Pittman objected to this, and the captain said he would send hands to help him assort it. Pittman then sold the thirty-three bales which did not belong to plaintiff, and they were carried away before the fire. The hemp of plaintiff consisted of three different lots, having different marks. Pittman employed weighers, who weighed the hemp that was sold, and piled up, assorted and weighed that portion of plaintiff's hemp that was put out. There was evidence tending to show that, by the custom prevailing at St. Louis, these acts amounted to a delivery of the portion put out, and evidence tending to show that no such custom existed.

The policy upon which plaintiff's shipments were indorsed, insured against the usual perils of the river and against fire, "beginning the adventure upon said property, from and immediately following the loading thereof on board the boat or vessel, and so shall continue and endure until the arrival of the said boat or vessel at the port of destination, and with reasonable time allowed to discharge the cargo." The shipments that might be indorsed on the policy were stated to be shipments "from Lexington or any landing on the Missouri river, to any other point on said river, St. Louis, Pittsburgh, New

Orleans, or any other landing on the Mississippi or Ohio rivers, and to the Atlantic cities, by way of New Orleans, Pittsburgh, Cincinnati and the lakes, or Chicago and the lakes, with privilege of reshipping, at all times and places, on good sail vessels or steamboats, or upon keel boats in the Ohio in low water," &c.

The court instructed the jury that the risk did not terminate as to the part of the hemp landed, unless it had been received or accepted by the consignee, or unless a reasonable time had elapsed for the discharge of the remainder of it.

The court further instructed the jury that a delivery according to the custom of the port, if such custom was shown, exonerated the defendant as to the part delivered.

The court refused to instruct that the delay and reshipment at Jefferson city discharged the defendant.

The jury found a verdict for the plaintiff for the whole amount claimed, and the defendant appealed.

*Haight & Shepley*, for appellant. 1. The unnecessary delay and reshipment at Jefferson city amounted to a deviation, and discharged the underwriters. 7 Cranch, 26. Hughes on Ins. 129. 1 Arnold on Ins. 389. 3 Kent's Comm. 6 East, 54. 1 Phillips on Ins. 512, 513. 8 B. & C. 119. 7 Mann. & Gran. 328. Park on Ins. 652. 7 Mo. 381. See particularly, 3 Mees & Wels. 49. 2. The underwriters are discharged from any liability for that portion of the shipment which had been landed on the levee. The words usually inserted in policies are, " *until the same shall be there discharged and safely landed.*" The words in this policy are obviously intended to shorten the period during which the insurer continues liable, and not to enlarge it. The risk continues until the goods are discharged, *if they are discharged within a reasonable time.* What, then, is a discharge from the boat? Obviously, a delivery to the consignee is not necessary. The liability of the insurer has no connection with that of the carrier; for it is admitted on all hands that, if all the goods are landed, the insurer's lia-

bility terminates, whether there has been a delivery to the consignee or not. The plain construction of the policy is, that the instant any portion of the goods ceases to be exposed to the perils against which they are insured while on the water, the risk on that portion terminates. 3 Camp. 161. 1 Burr. 84. 8 Cranch, 84. 5 Binney, 595. 1 Arnold, 432. The cases of *Gardner* v. *Smith*, 1 Johns. Cases, 141, and *Tiernay* v. *Etherington*, cited 1 Burr. 341, do not sustain the ruling of the court below. If the principle is correct that the liability of the insurer did not terminate until all the hemp was discharged, then it ought to be true that it did not begin until it was all loaded on board; and how would it be if the boat had burned after part of the hemp was loaded on board, and before all of it was? If it is true that the risk cannot be apportioned, the insurer would not be liable in such a case. 3. The court should have instructed the jury that the hemp placed on the levee had been delivered to the consignee. 1 Rawle, 203. 4 Bos. & Pul. 16. 4 Pick. 371. 1 Denio, 45. 1 Mees. & Wels. 173. 5 Binney, 595. 17 Wend. 305. 5 T. R. 397.

*Glover & Richardson*, for respondent. 1. The policy expressly gave the privilege of reshipping. 2. The question of delivery was properly left to the jury, being one of fact; they have found against the defendant, and this court will not disturb their verdict. 3. It was proved that a reasonable time had not elapsed for the discharge of the plaintiff's hemp, before it was burned. Placing part of a shipment on the levee, the balance remaining in the boat, was not a discharge of any part, unless the part put on the levee was accepted by the consignee. He is not bound to receive portions of his consignment. The risk continued on the whole until the whole was discharged, or until a reasonable time to discharge it had elapsed, and not merely while it was *in transitu*. *Gardner* v. *Smith*, 1 Johns. Cases, 141.

RYLAND, Judge, delivered the opinion of the court.

1. The questions, as they appear in this case, are mainly in regard to what constitutes a delivery, and whether reshipment makes the policy void. I will dispose of the last question first. This was an open policy, in which the plaintiff, Fletcher, was insured in the sum of fifty thousand dollars, lost or not lost, for account and risk of whom it may concern, on such shipments as he may make, or may be made and indorsed thereon, of produce, stock, merchandise or other commodities, from the first day of February, 1849, to the first day of December, 1849, from Lexington or any landing on the Missouri river, to any other point on said river, St. Louis, Pittsburgh, New Orleans, or any other landing on the Mississippi or Ohio rivers; and to the Atlantic cities by way of New Orleans, Pittsburgh, Cincinnati and the lakes, or Chicago and the lakes, with privilege of reshipping at all times and places, on good sail vessels or steamboats, or upon keel-boats on the Ohio in low water, &c. This was a shipment of hemp from Dover landing, on the Missouri, and from Waverly, on the Missouri river, on the steamboat Amelia to St. Louis. The Amelia reshipped the hemp at Jefferson city, on the Missouri river, on board the steamboat Kit Carson.

The petition of the plaintiff states this fact of reshipment on the Kit Carson at Jefferson city, and the answer sets up this reshipment as a deviation and avoidance of the policy. The words of the answer on this point are as follows : " That upon said shipment being made upon said steamboat Amelia, the said plaintiff received from said boat a bill of lading therefor, which bill of lading is now in the possession of said plaintiff, and which the said defendant requires to be produced by him on the trial of said cause ; that by the said bill of lading, no privilege of reshipping upon any other boat was given to said steamboat Amelia, but the contract between the said plain-

tiff and said steamboat was, that the same should be carried by said steamboat Amelia to St. Louis; that if said steamboat Amelia had faithfully performed her contract in that behalf, no accident by fire would have occurred to said hemp; but that the said steamboat, after having proceeded on her said voyage as far as Jefferson city, in violation of her said contract, and to the prejudice of the rights of said defendant, did, at the said port of Jefferson city, reship the said merchandise on board of the steamboat Kit Carson, though said steamboat Amelia was not compelled thereto by any unavoidable dangers of the river, nor by fire. Defendant states that by reason of said transhipment, the said hemp ceased to be covered by said policy; the said defendant states that, in the first place, by reason and means of said transhipment of said hemp from said steamboat Amelia, the same ceased to be covered by said policy, and all liability of said defendant on account of the same was ended."

Now to this answer it may be said that, by the very terms of the policy, this privilege is given : " to reship at all times and places"—words sufficiently comprehensive to include this reshipment. This policy was designed by the parties to be full, broad and ample enough to protect the property shipped by the plaintiff to the amount specified, and between the times specified. This reshipment, then, cannot be claimed as a deviation under this policy, and the answer does not set up nor rely upon the delay or stopping of the Amelia, or upon her abandonment of the voyage at Jefferson city, even if that would benefit the defendant. Upon this point then, it is the opinion of this court, that the court below committed no error.

2. On the second point, as to the delivery of the goods, and whether a landing of the hemp in part exonerates the company of underwriters or not. In the opinion of this court, a landing of a part of the cargo insured, will not exonerate the Insurance company from a loss incurred on such part, unless that part had been received by the consignee into his own custody. The

boat or vessel cannot split up the liability of the insurers or the rights of the assured in this manner, by delivering a portion of the cargo. The duty of the boat is to land safely the property carried, in a reasonable time. To land the hemp which it was carrying for the assured in this case, does not mean only a portion of the hemp.

In *Smith* v. *Gardner*, 1 Johns. Cases, 141, Lansing, chief justice, said : " On account of the nature of the voyage, the insurance, in point of time, was extended twenty-four hours after the goods should be landed. A protection against the risk of seizure until they should be landed, was. a direct and important stipulation in the contract, and the insurance being entire, we are of opinion that the risk continued on the entire goods until twenty-four hours after all of them were landed. This is the correct sense of the terms of the policy, and it would be inconvenient to admit a different construction. The risk cannot reasonably be divided and applied to separate parcels. It would be difficult, if not impossible, under the usual circumstances of such a voyage, to descend to the minute details which would be requisite, and to distinguish the precise time of landing each article."

" The undertaking of a common carrier to transport goods to a particular destination, necessarily includes the duty of *delivering them in safety*, and his obligation is to deliver them safely at all events, excepting the goods be lost by the act of God or the public enemy. It is not enough that the goods be *carried* in safety to the place of delivery, but the carrier must, and without demand upon him, *deliver* ; and he is not entitled to freight until the contract for a complete delivery is performed." Angel on Com. Carriers, sec. 282. " When the responsibility has begun, it continues until there has been a due delivery by the carrier, or he has discharged himself of the custody of the goods in his character of common carrier." 2 Kent's Com. 604. 4 T. R. 581. In order to discharge the master from his responsibility, he must allege and prove, either that he *delivered*

the goods to the consignees, " according to the express terms of the bill of lading, or else that he delivered them according to the practice and custom usually observed in the port of delivery." 2 Arnold on Ins. 779. The risk of the vessel is at the charge of the insurers until her entry into port, and the risk of the goods until they have been landed on the quay at the place of their destination. Emerigon, 586.

3. But we know of no general rule of law which governs the delivery of goods under a bill of lading, where such delivery is not expressly in accordance with the terms of the bill of lading, except that it must be a delivery according to the practice and custom usually observed in the port or place of delivery. The custom contended for, that the landing of a part of the cargo is the landing of the whole, and consequently a discharge of the risk on the policy, is very much of kin to the custom set up in the case of *Yates* v. *Pym*, 6 Taunton's Rep. 446, which was an action on a warranty given on a sale of prime singed bacon. Evidence was offered to show that, by a practice in trade, bacon to a certain degree tainted, was received as prime singed bacon ; and of another practice by which the purchaser was precluded from all remedy, if he did not promptly discover the objection and point it out. Heath, J., rejected this evidence. Gibbs, chief justice, said : " I cannot think that any custom of trade can be admissible to prove the proposition contended for." Now the receiving of any part of the cargo by the consignee into his own custody and charge, should operate to discharge the risk upon so much. Here, under very favorable instructions for the defendant, this delivery and reception were left to the jury. They heard all the evidence ; they were competent to understand and determine this matter aright. The judgment of the court is, with the concurrence of Judge Scott, affirmed. Judge Gamble not sitting.